1  Rosemary M. Rivas (SBN 209147)
   rmr@classlawgroup.com
2  Rosanne L. Mah (SBN 242628)
   rlm@classlawgroup.com
3  **GIBBS LAW GROUP LLP**
   1111 Broadway, Suite 2100
4  Oakland, California 94607
   Telephone:   (510) 350-9700
5  Facsimile:   (510) 350-9701
6
7  *Attorneys for Plaintiff*

8

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FRAN BAX, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| WESTERN DIGITIAL CORPORATION, | |
| Defendant. | |

CLASS ACTION COMPLAINT
CASE NO.

Plaintiff Fran Bax ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action suit for damages and equitable relief against Defendant Western Digital Corporation ("Defendant" or "Western Digital"). Plaintiff alleges the following based upon personal information as to the allegations regarding himself, on the investigation of his counsel, and on information and belief as to all other allegations.

## NATURE OF THE ACTION

1.      Plaintiff hereby brings claims on behalf of himself and all others similarly situated who bought external and portable solid-state drives (SSDs) from Western Digital, including its SanDisk brand. The following lines and models contain a defect that causes customers to lose all of their stored data and prevents them from reliably storing data: SanDisk Extreme Portable SSD V2; SanDisk Extreme Pro Portable SSD V2; WD My Passport SSD; SanDisk Extreme Portable 4TB (SDSSDE61-4T00); SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00); SanDisk Extreme Pro 2TB (SDSSDE81-2T00); SanDisk Extreme Pro 1TB (SDSSDE81-1T00); and WD My Passport 4TB (WDBAGF0040BGY) (collectively referred to herein as the "Devices").[1]

2.      SSDs are a type of external storage devices used with computers, which are "non-volatile storage media [that] stores persistent data on solid-state flash memory." They are designed to replace traditional hard disk drives in computers and perform the same basic function as hard drives, although they are significantly faster in comparison in terms of booting up, loading, and saving files.[2]

3.      The Devices become unusable when they are around 50% capacity, at which point they will start showing read and write errors, as being unformatted, and will unexpectedly wipe and erase any stored data, and become unreadable (the "Defect"). Reformatting the Devices, however, will not resolve the problems.[3] As a result of the Defect, the Devices do not safely, securely, and reliably store consumers'

---

[1] "TB" stands for terabyte. One TB is equivalent to 1,000 gigabytes. Plaintiff reserves the right to add additional lines and/or models after having the opportunity to conduct discovery.

[2] *See* https://www.techtarget.com/searchstorage/definition/SSD-solid-state-drive?Offer=abMeterCharCount_var1.

[3] *See* https://www.zdnet.com/article/check-your-ssds-what-to-know-about-the-sandiskwestern-digital-data-loss-disaster/.

CLASS ACTION COMPLAINT
CASE NO.

digital files and data. One tech news article from ZDNET warns users that "you could be sitting on a ticking data loss time bomb that could cause you no end of headaches."[4]

4.     Numerous consumers have complained about the loss of data stored on the Devices. In May 2023, Defendant attempted to address its customers' complaints by releasing a firmware update, however, the Devices continued to wipe out and erase valuable data.[5] Defendant released another firmware update in July 2023—version R332G190—however, users complain that even after the firmware update, the Devices prevent the writing of new data and continue deleting existing data. Users have also complained that the replacements offered by the company suffer from the same Defect. Defendant continues to market and sell the Devices notwithstanding the known Defect.

5.     Plaintiff alleges that Defendant's conduct, described in further detail below, violates the consumer protection laws of California and New York and constitutes a breach of Defendant's warranty obligations. On behalf of himself and others similarly situated, Plaintiff seeks all available monetary and equitable relief, including damages, restitution, an injunction, and all other appropriate relief.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there are more than 100 class members nationwide, the aggregate amount in controversy exceeds $5 million exclusive of interest and costs, and Plaintiffs and Class members are of diverse citizenship from Defendant. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Western Digital because it maintains its principal place of business in San Jose, California. It has continuous and systematic contacts with California such that it has sufficient minimum contacts here. Defendant intentionally avails itself of this jurisdiction by maintaining and conducting its corporate operations in California.

8.     Venue is this Court is proper under 28 U.S.C. § 1391 because Defendant is headquartered and has its principal place of business in this District, intentionally and regularly conducts business in

---

[4] *See id.*
[5] *See* https://www.engadget.com/western-digital-promises-to-release-firmware-update-for-failing-sandisk-extreme-ssds-211924180.html.

CLASS ACTION COMPLAINT
CASE NO.

this District, and a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims have occurred in this District.

## **THE PARTIES**

9.     Plaintiff Fran Bax ("Plaintiff") resides in Niagara County and is a citizen of New York. In or around May 2022, he bought a SanDisk Extreme Pro Portable SSD 4TB (model number SDSSDE81-4T00) online from Amazon for approximately $620.84. In or around July 2023, he bought another SanDisk Extreme Pro Portable SSD 4TB (model number SDSSDE81-4T00) online from Amazon for approximately $299.99.

10.     Shortly before buying the second device, the first device failed. The second device failed only a week after he purchased it. Both devices failed, despite Defendant's firmware updates.[6] Plaintiff unexpectedly and without warning lost 30 years-worth of data stored on each of the devices. Plaintiff has incurred expenses trying to retrieve his lost data. Plaintiff no longer trusts using the devices and both are now worthless to him.

11.     Plaintiff purchased the devices because he thought he could safely, securely, and reliably store and retrieve his data with the devices.

12.     At no point before Plaintiff bought the first or second device did Defendant or its representatives disclose the Defect to him. If Defendant had disclosed the Defect to him, Plaintiff would have been aware of it, and he would not have bought the SanDisk Extreme Pro Portable SSD 4TB twice or would have paid less for the devices. Plaintiff only became aware of the Defect after his devices failed and he lost all of his data stored on them. Plaintiff would consider purchasing Defendant's products in the future, so long as Defendant fixes the Defect and properly label its products.

13.     Defendant Western Digital Corporation is a Delaware corporation, which maintains its principal place of business at 5601 Great Oaks Parkway, San Jose, California 95119. In 2016, Western

---

[6] According to Defendant's website (https://support-en.wd.com/app/firmwareupdate), Plaintiff's SanDisk Extreme Pro Portable SSD 4TB (model number SDSS-DE81-4T00) purchased in or around July 2023 received Defendant's firmware update. As for Plaintiff's SanDisk Extreme Pro Portable SSD 4TB (model number SDSS-DE81-4T00) purchased in or around May 2022, the serial number is difficult to make out, so Plaintiff was unable to check that device on Defendant's website.

CLASS ACTION COMPLAINT
CASE NO.

Digital acquired SanDisk Corporation. With the addition of SanDisk, Western Digital is "a comprehensive storage solutions provider with global reach."[7] Western Digital is "a leading developer, manufacturer, and provider of data storage devices."[8]

14. Defendant's executives, including its Chief Executive Officer, and employees responsible for the manufacture, marketing, advertising, distribution, sales, warranty, and customer service of the Devices are located at Defendant's headquarters in San Jose, California. In addition, the decisions regarding the marketing and sale of the Devices, the decisions concerning the disclosure or non-disclosure of the Devices' defect, the attendant risks of data loss, and actual data loss incidents were made in whole or substantial part by Defendant at its San Jose, California headquarters.

## **FACTUAL ALLEGATIONS**

### **Western Digital's Business Background**

15. Western Digital is an American company headquartered in San Jose, California and a leading provider of data storage solutions. The company manufactures and sells computer drives and data storage solutions. Western Digital also sells data center systems and cloud storage services.[9]

16. The company has a "17.6% market share in the global SSD market, making it the second largest player. The company's revenue from its SSD division in 2020 was approximately $2.9 billion."[10]

17. SSDs are sold by Western Digital under various brand names, including SanDisk and WD, and includes the defective Devices identified in this Complaint.[11]According to Western Digital, it "create[s] data storage solutions that power the technology of today and inspire the innovations of tomorrow."[12]

---

[7] *See* https://www.prnewswire.com/news-releases/western-digital-completes-acquisition-of-sandisk-creating-a-global-leader-in-storage-technology-300267606.html.
[8] *See* Western Digital's Securities and Exchange Commission (SEC) From 10-K for the fiscal year ending on July 1, 2022, which can be accessed at
*https://materials.proxyvote.com/Approved/958102/20220919/AR_517462/INDEX.HTML?page=7.*
[9] *See* https://www.techtarget.com/whatis/definition/Western-Digital-Corporation-WDC.
[10] *See* https://www.linkedin.com/pulse/top-players-solid-state-drive-ssd-market-comprehensive-analysis/.
[11] *See id.*
[12] *See* https://www.linkedin.com/company/western-digital/about/.

CLASS ACTION COMPLAINT
CASE NO.

18.     Western Digital's SSDs are designed to be fast, reliable, and energy efficient.[13]

19.     In September 2020, Western Digital announced an "enhanced" line of "Extreme" portable SSDs, offering "nearly 2x the speed over previous generations."[14] In its official press release, Western Digital stated that the SanDisk Extreme and SanDisk Extreme PRO portable SSDs "are purpose-built to keep up with today's high-quality content demands. Professional photographers, videographers and enthusiasts capture and keep life's best moments every day and they need reliable solutions that perform on the move at astonishing speeds."[15] Western Digital further touts its Devices has "built to reliably handle the most challenging assignment – whether at home, in the office or out on location."[16]

**Western Digital's Product Representations**

20.     Western Digital designs, manufactures, markets, and sells the Devices referenced in this Complaint directly on its website and through a network of retailers, such as Amazon.

21.     Western Digital continues to market and sell the Devices on its website. For instance, Western Digital says: "From the brand trusted by professional photographers worldwide, the SanDisk Extreme PRO Portable SSD provides powerful solid-state performance in a rugged, dependable storage solution."[17]

22.     Western Digital also makes the following representations on its website regarding the SanDisk Extreme PRO Portable SSD, which are uniformly made to all consumers purchasing the product:[18]

**Fast and Dependable**

---

[13] *See* https://www.linkedin.com/pulse/top-players-solid-state-drive-ssd-market-comprehensive-analysis/; *see also* https://www.globenewswire.com/en/news-release/2022/09/29/2525322/0/en/Solid-State-Drive-SSD-Market-to-Hit-Sales-of-104-44-Billion-By-2028-Samsung-WD-and-Kioxia-Generate-Over-55-Revenue-SkyQuest-Technology.html.
[14] *See* https://www.westerndigital.com/company/newsroom/press-releases/2020/2020-09-30-western-digital-unveils-enhanced-line-of-sandisk-extreme-portable-ssds.
[15] *See id.*
[16] *See id.*
[17] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd?sku=SDSSDE81-4T00-G25#SDSSDE81-4T00-G25.
[18] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd?sku=SDSSDE81-4T00-G25#SDSSDE81-4T00-G25.

5

Get powerful NVMe™ solid state performance featuring 2000MB/s² read/write speeds in a portable drive that's reliable enough to take on any adventure.

**Professional-Grade Storage**

From SanDisk, the brand professional photographers worldwide trust to handle best shots on their toughest assignments.

**SanDisk Memory Zone App for Easy File Management**

Available from the Google Play store, the SanDisk Memory Zone app lets you unlock, access and back up your phone's files in one location. It can also automatically move files from your devices to your SSD to free up space.

23. Western Digital makes identical representations for its SanDisk Extreme Pro 2TB (SDSSDE81-2T00) and SanDisk Extreme Pro 1TB (SDSSDE8101T00) as those listed in the preceding two Paragraphs.[19]

24. For the SanDisk Extreme Portable 4TB (SDSSDE61-4T00), Western Digital makes the following representations:[20]

**Powerful yet Portable**

Get fast NVMe™ solid state performance featuring 1050MB/s² read and 1000MB/s² write speeds in a portable, high-capacity drive that's perfect for creating amazing content or capturing incredible footage.

**Professional Grade Storage**

From SanDisk, the brand professional photographers worldwide trust to handle their best shots and footage.

---

[19] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25.

[20] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-usb-3-2-ssd#SDSSDE61-4T00-G25.

CLASS ACTION COMPLAINT
CASE NO.

**SanDisk Memory Zone App for Easy File Management**

Available from the Google Play store, the SanDisk Memory Zone app lets you unlock, access and back up your phone's files in one location.  It can also automatically move files from your devices to your SSD to free up space.

25.    And Western Digital makes the following representations regarding the WD My Passport 4TB (WDBAGF0050BGY) SSD:[21]

Save, access, and protect the content that matters to you with My Passport™ SSD, giving you read speeds of up to 1050MB/s$^2$ and write speeds of up to 1000MB/s$^2$ with NVMe™ technology.

**ACCELERATED PERFORMANCE**

Larger files and more content demand next-level performance.  The My Passport™ SSD delivers read speeds of up to 1050MB/s$^2$ and write speeds of up to 1000MB/s$^2$, and capacities of up to 4TB so you can access your digital world anytime, anywhere.

**SIMPLE BACKUP**

Included backup software makes it easy to enable simple back up of high-capacity files to your drive or cloud service account.  Set it and forget it!  Compatible with Apple Time Machine (requires formatting).

**THE NEW LOOK OF SSD PERFORMANCE**

Stylishly designed in a range of colors, enclosed in a compact sleek metal design.  The My Passport™ SSD is engineered from the ground up to be a quality drive, inside and out, to deliver reliable performance.  It's a trusted drive built with WD reliability.

26.    Despite these product-specific representations touting their performance and reliability, Western Digital's Devices fail to allow consumers to reliably store and retrieve their data. More than a

---

[21] *See* https://www.westerndigital.com/products/portable-drives/wd-my-passport-usb-3-2-ssd#WDBAGF0040BGY-WESN.

CLASS ACTION COMPLAINT
CASE NO.

third of the product reviews (58 out of the 143) on Western Digital's website rated the SanDisk Extreme PRO Portable SSD with only one star out of a possible five stars.[22]

27.     One customer with username wc00 provided the following review:

**Not reliable!**

Since buying this hard drive I have had nothing but issues with files being corrupted and deleted. As a photographer I needed something easy to bring around while I'm traveling doing photo shoots and this hard drive has made things very stressful. Lost hundreds of files and now I'm not even sure I will get them back. *Id.*

28.     Another customer with username Fron said:

**What a screw job.**

I have three San Disk Extreme SSDs and have had no issues. But this time, I purchased an Extreme Pro, and after 10 days of use, the drive showed up on my Mac as Untitled, and the 5,000 photos I had on the drive from recent photo shoots are all gone. And these drives screwing people has been a KNOWN ISSUE for some time. How are these still for sale? I got a quote of $1200 for data recovery, and it could take a month with no guarantees. Who is going to pay for that San Disk?! These drives should have been recalled long ago, and not I have to refund two clients for having lost their images. I won't be buying San Dusk (and definitely not WD drives) ever again, but I expect full compensation for drive replacement and data recovery. *Id.*

29.     Username Burned was even more to the point in their review on Western Digital's website:

**Erases itself at random intervals.**

Don't trust it with any data that you aren't comfortable losing. Mine has wiped itself 3 times now, and i'm throwing it away. *Id.*

30.     Despite Western Digital's product representations, the Devices' Defect in manufacturing and/or design was not known by or even discoverable by Plaintiff or Class members at the time of

---

[22] *See* Only 25% of the 143 reviewers recommend the product. https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd?sku=SDSSDE81-4T00-G25#SDSSDE81-4T00-G25.

CLASS ACTION COMPLAINT
CASE NO.

purchase, making the Devices unmerchantable and unfit for the ordinary purpose of safely, securely, and reliably storing and retrieving data, contrary to Western Digital's product representations which are still being made on its website.

31.     Western Digital has failed to disclose and concealed material facts, namely the Defect, from consumers. Consumers did not receive their benefit of the bargain, and instead lost their valuable data and as a result, may have to expend thousands of dollars to recover their data, if it is recoverable at all. Even if a Device has not yet malfunctioned, consumers do not trust storing additional data on the Devices given that they can unexpectedly wipe out and erase data without warning. As a result, customers have had to purchase new SSDs.

**Problems with Western Digital's SSDs**

32.     On May 19, 2023, website Ars Technica reported that for the past several months, numerous SanDisk customers had complained about Defendant's Extreme and Extreme Pro portable SSDs wiping data and/or becoming unreadable.[23]

33.     One Reddit user referred to as ian_ wrote:

> Multiple DITs/Loaders/Acs on both coasts have experienced the exact same failure with these drives over the last month.  The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot [whether] you can recover it or not.  The primary way you will see this is that the drive will unmount and you will not be able to get it to mount again, despite showing up in Disk Utility.  You can sometimes recover it using DiskDrill's filesystem rebuild, but occasionally that does nothing.  It persists with any filesystem type.[24]

34.     In their warning posted on reddit, ian_ also warned that "[u]nfortunately consolidation in the hard drive industry has given us few other options that are portable, affordable, and speedy so it's fairly important to get this addressed.[25]

---

[23] *See* https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/amp/.
[24] *Id.*
[25] *See* https://www.reddit.com/r/editors/comments/10syawa/comment/jkimgjs/.

CLASS ACTION COMPLAINT
CASE NO.

35. Another reddit user outlookable posted the following in early 2023:

**Sandisk Extreme Pro External 4TB SSD failing to mount to MacOS**

I bought this on Thursday from B&H. Arrived Friday and formatted it to I believe macos extended journaled, then loaded it up with a bunch of essentially irreplaceable photos without much thought. This morning I uploaded a bunch of them to my Cryptomater iCloud vault to show a friend. I come back a few hours later and I can't view the files on this drive and I eject it, plug it back in and it won't mount, but I can see the disk utility and it knows it's 4TB.

36. Despite the complaints affecting the 2TB and 4TB models, the SanDisk firmware update was available for the 4TB models.[26] Ars Technica's Senior Editor, Lee Hutchinson, however, confirmed the defect in two 2TB SSDs and when the drives are filled about halfway is when they begin to show a slew of read and write errors. When Hutchinson attempted to reconnect the SSD, it showed that it was unformatted with the drive completely wiped, including its file system.[27]

37. Defendant met Ars Technica's reporting about the issue by offering the following statement:

Western Digital is aware of reports indicating some customers have experienced an issue with 4TB SanDisk Extreme and/or Extreme Pro portable SSDs (SDSSDE61-4T00 and SDSSDE81-4T00 respectively). We have resolved the issue and will publish a firmware update to our website soon. Customers with questions or who are experiencing issues should contact our Customer Support team for assistance.[28]

38. Notably, Defendant declined to answer Ars Technica's questions about refunds, whether the firmware would address similar issues with the 2TB models, the cause of the problems, or when exactly the firmware fix would be released.[29]

---

[26] *See id.*

[27] *See* https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/amp/.

[28] *Id.*

[29] *See id.*

10

CLASS ACTION COMPLAINT
CASE NO.

39.     Another tech website opined that "Western Digital's slow response is disappointing, especially since SanDisk drives are generally known for their reliability."[30]

40.     But the firmware update Western Digital issued did not work.  Western Digital seemed to have issued another firmware update in July 2023. In response to an online complaint, Western Digital provided the following online response in July 2023:

> We have identified a firmware issue that presents itself in very limited situations and can cause SanDisk Extreme Portable SSD V2, SanDisk Extreme Pro Portable SSD V2, and WD My Passport SD products to unexpectedly disconnect from a computer.  Full details, including a serial number loop tool to find out if your product is impacted, can be found on the Firmware Updates for SanDisk & WD Portable SSDs page.[31]

41.     Replacement devices are also defective. In an article published on The Verge on August 7, 2023, Senior Editor Sean Hollister reported that his colleague lost 3 TB of video footage *after* receiving the supposedly safe replacement drive from Western Digital after his original SSD had wiped all of his data by itself.[32]

42.     The Verge's article continued to suggest a belief that "it feels like WD has been trying to sweep this under the rug while it tries to offload its remaining inventory at a deep discount – they're still 66 percent off at Amazon, for example."  This behavior is particularly troubling in light of the fact that Western Digital has yet to even acknowledge the possibility of massive data loss.[33]

**Western Digital's Failure to Provide a Fix**

43.     Despite being on notice of the Defect, Western Digital has not systematically addressed consumers' concerns or provided a fix for the Defect. Since the Devices launched in September 2020, on information and belief, Western Digital's customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted on its website, and the internet; regularly

---

[30] *See* https://www.engadget.com/western-digital-promises-to-release-firmware-update-for-failing-sandisk-extreme-ssds-211924180.html.
[31] *See* http://support-en.wd.com/app/firmwareupdate.
[32] *See* https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued.
[33] *See id.*

CLASS ACTION COMPLAINT
CASE NO.

monitor and respond to customer calls concerning issues with the Devices, including error codes, formatting and reformatting issues, and data loss; collect and analyze these customer issues; and respond to warranty claims. At the time this Complaint was filed, no recall has been issued or even suggested by Western Digital.

44.    User complaints began surfacing in the public domain by at least January 2023 that the Devices were suddenly wiping data and sometimes becoming unreadable.[34]

45.    For example, on Western Digital's website, it received a one-star review from username Amr Hanafi who complained in January 2023:

> I am unable to use it as Time Machine with my iMac as it keeps crashing. As soon as the copying starts, the drive heats up and shutdown causing the computer to lose connection with the drive and the Time Machine backup to fail.[35]

46.    Again, in February 2023, another consumer with username melissailic provided the following comment on Western Digital's website regarding her Device:

> I partitioned and formatted it multiple times and it would not stay mounted or even recognized.[36]

47.    Western Digital provided the same generic response in February 2023 and the same follow-up response referencing a firmware update in July 2023.[37]

48.    And Western Digital's website is replete with consumers' reviews complaining that their Devices were crashing and losing their data.[38]

49.    In addition, reddit user KengoSawa2 posted the following in March 2023 while responding to a post warning other consumers about failures of the Devices:

> This problem is also occurring in Japan.

---

[34] *See* https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/.

[35] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25.

[36] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25.

[37] *See* https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25

[38] *See id.*

CLASS ACTION COMPLAINT
CASE NO.

I am a post-production engineer and I encountered the same problem.

I can't give you more details, but the problem was recognized by the Japanese

distributor and passed on to SanDisk, and is now being verified by the developer.

I am also told that this problem is causing a fuss and is only for those

manufactured after November 2022.

My gut feeling is that this appears to be a design defect due to a minor change or

a lot defect due to a problem during manufacturing.

In any case, we should continue to report this to the manufacturer to prompt an

official statement from Sandisk.[39]

50.    The Verge tried to get Western Digital's response to consumers' complaints by sending it the following questions on August 7, 2023:[40]

      a.    Why are these drives still on sale?

      b.    Will you offer free data recovery services to affected customers?  When?

      c.    Are you proactively warning customers and retailers who have already purchased these drives that significant data loss is possible?

      d.    If not, why not?

      e.    What, exactly, is going wrong with these drives?

      f.    How did this happen?

51.    The Verge did receive a response from Western Digital's head of public relations Robin Schultz, but the company's stance had not changed.  Instead, it refused to respond to The Verge's questions.[41]

52.    Schultz's statement failed to acknowledge the issue and provided no specific timeline for real answers.  Schultz stated as follows: "In response to recent reports of concerns about specific Western Digital portable SSD products, we want to assure our valued customers that we are taking all measures

---

[39] *See*
https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/.
[40] *See* https://www.theverge.com/23837513/western-digital-sandisk-ssd-corrupted-deleted-questions.

[41] *See id.*

CLASS ACTION COMPLAINT
CASE NO.

necessary to address any product-related issues. We understand the significance of our products to our customers and we take these matters very seriously. We are conducting a comprehensive review to gain a thorough understanding of the issues.[42]

53.    The Verge reported that Western Digital has faced litigation before related to allegations of deception. First, Western Digital settled a class action case for $5.7 million alleging that in 2020 the company tried to sneak SMR drives into its "WD Red" lineup marketed for network-attached storage drives. Second, NAS disks have started triggering warnings even if there is nothing wrong with the drive, which would scare people into purchasing new drives even if their drives are working just fine.[43]

54.    In addition, Western Digital appears to have engaged in "astroturfing," which is an attempt to create an impression of support for a product where it does not naturally exist, often employing multiple online identities used to mislead the public into believing that the reviewers' opinions are the commonly held view.[44]

55.    The Verge provided an example of what it concluded was astroturfing on Amazon, where the SanDisk Extreme Portable SSD still enjoys a 4.7-star rating out of a possible 5.0 stars.[45]

---

[42] *See id.*

[43] *See id.*; *see also* https://boingboing.net/2023/08/20/western-digital-still-selling-defective-sandisk-brand-ssds-that-it-refuses-to-answer-questions-about.html.

[44] *See* https://www.theguardian.com/commentisfree/2012/feb/08/what-is-astroturfing.

[45] *See* https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued.

CLASS ACTION COMPLAINT
CASE NO.

### Panda

★★★★☆ **Speed and Reliability in a Compact Package - A Four-Star Review**

Reviewed in the United States on July 20, 2023

Color: Black | Capacity: 2TB | Verified Purchase

I recently purchased the SanDisk 2TB Extreme Portable SSD, and it has proven to be a reliable and high-performance external storage solution for my data-intensive needs. With its exceptional speed, compact design, and sturdy build, it earns a solid four-star rating.

One of the standout features of this portable SSD is its lightning-fast speed, boasting up to 1050MB/s transfer rates. This impressive speed allows for seamless handling of large files, making it an ideal choice for photographers, content creators, and anyone dealing with data-heavy tasks. Transferring bulky files becomes a breeze, saving valuable time and enhancing productivity.

The compact and lightweight design of the SanDisk Extreme SSD is a significant advantage for users on the go. It easily fits into my bag or pocket, making it a convenient companion for travel or remote work. Despite its small size, the SSD feels robust and durable, providing peace of mind when taking it along on my adventures.

∨ Read more

10 people found this helpful

| Helpful | Report |

### Yanky

★★★★★ **Slim and fast**

Reviewed in the United States on July 23, 2023

Color: Black | Capacity: 2TB | Verified Purchase

The SanDisk 2TB Extreme Portable SSD is an absolute powerhouse! This external solid-state drive has completely transformed the way I manage and transfer my data, and I couldn't be more impressed with its performance.

The lightning-fast speed of up to 1050MB/s is nothing short of remarkable. Transferring large files and folders is now a breeze, saving me valuable time and boosting my productivity. Whether I'm working with 4K videos, high-resolution images, or extensive project files, this SSD handles it all with ease.

The USB-C and USB 3.2 Gen 2 compatibility provide seamless connectivity across various devices, making it incredibly versatile. I can effortlessly connect it to my laptop, desktop, or even my smartphone, enabling me to access my data on the go without any hassle.

The compact and rugged design is perfect for my on-the-go lifestyle. It's shock-resistant, which gives me peace of mind knowing that my data is safe even during accidental drops or bumps. Additionally, the sleek

∨ Read more

7 people found this helpful

| Helpful | Report |

*Astroturfing at Amazon. Were these written by ChatGPT? I can't say.* Screenshot by Sean Hollister / The Verge

56.     The Verge concluded that "the top two Amazon reviews are clearly working off the same playbook."[46]

---

[46] *See id.*

57. Thus, Western Digital's silence regarding customer complaints combined with the practice of astroturfing and lowered sales prices suggests that Western Digital might be attempting to offload its defective products as soon as it can.

58. While a company can do whatever it wants with its sales strategy, it is patently deceptive and unconscionable to knowingly continue to sell defective products without advising consumers in this instance of the risk of total, unrecoverable data loss that result from the Defect and use of the Devices during their normal and ordinary use.

59. Consequently, Plaintiff seeks monetary damages, injunctive and equitable relief, attorney's fees, reasonable expenses, and all other relief permitted by law on behalf of himself and the Class he seeks to represent, as set forth in the claims below.

**Fraudulent Omission/Concealment Allegations**

94. Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible through reasonable investigation and absent discovery to the information available exclusively only to Defendants:

95. *Who*: Defendant Western Digital actively concealed and omitted the Defect from Plaintiff and Class members while at the same time promoting the safety, security, reliability, and functionality of the Devices, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decision-making.

96. *What*: that the Devices contain the Defect which causes data loss and as alleged herein. Defendant concealed and omitted the Defect while making representations about the safety, security, reliability, functionality, and other attributes of the Devices, as alleged herein.

97. *When*: Defendant concealed and omitted material information regarding the Defect at all times while making representations about the safety, security, reliability, funcitonality of the Devices on an ongoing basis, and continuing to the present. Defendant still have not disclosed the truth about the full scope of the Defect in the Devices. Defendant has known about the Defect since at least January 2023 as discussed above. However, since the Devices launched in September 2020, on information and belief, Western Digital's customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted on its website, and the internet; regularly monitor and respond to

CLASS ACTION COMPLAINT
CASE NO.

customer calls concerning issues with the Devices, including error codes, formatting and reformatting issues, and data loss; collect and analyze these customer issues; and respond to warranty claims.

98. **Where**: Defendant concealed and omitted material information regarding the true nature of the defect in every form of communication they had with Plaintiff and Class members and made misrepresentations about the safety, security, reliability, and functionality of the Devices. Plaintiff is aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Defect in the Devices. Such information is not adequately disclosed in any product packaging, advertisements, warranties, product manuals or user guides, or on Defendant's websites. There are many sources through which Defendant could have disclosed the Defect, including, but not limited to, (1) point of sale communications; (2) the product's manual or user guides; and/or (3) public announcements or notices.

99. **How**: Defendant concealed and omitted the defect from Plaintiff and Class members and made representations about the safety, security, reliability, and functionality of the Devices. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiff and Class members at all times, even though Defendant knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Defendant promised in its marketing materials that the Devices have qualities that they do not have.

100. **Why**: Defendant actively concealed and omitted material information about the Defect in the Devices for the purpose of inducing Plaintiff and Class members to buy the Devices, rather than buying competitors' devices, and made representations about the safety, security, reliability, and functionality of the Devices. Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought the Devices or would not have paid as much for them.

## CLASS ACTION ALLEGATIONS

101. Plaintiff brings this action on behalf of himself and on behalf of the following proposed Class initially defined as follows: All persons and entities residing in the United States who purchased the Devices since at least January 2022 ("National Class").

102. Plaintiff also brings this action on behalf of himself and a New York State class defined

CLASS ACTION COMPLAINT
CASE NO.

as follows: All persons and entities residing in the State of New York who purchased the Devices since at least January 2022 ("New York State Class").

103. Excluded from the proposed National Class and the New York State Class (collectively referred to herein as "Class" unless otherwise noted) are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all Judges assigned to hear any aspect of this litigation, as well as their immediate family members.

104. Plaintiff reserves the right to re-define any of the Class definitions prior to class certification and after having the opportunity to conduct discovery.

105. This action has been properly brought and may properly be maintained as a class action under Rule 23(a) (1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

**Numerosity of the Proposed Class**
**Fed. R. Civ. P. 23(a)(1)**

106. The members of the Class are so numerous that their individual joinder would be impracticable. The Class is comprised of thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiff at this time, but can be ascertained from Defendant's records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

**Predominance of Common Questions of Fact and Law**
**Fed. R. Civ. P. 23(a)(2); 23(b)(3)**

107. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

a. Whether Defendant knew or should have known that the Devices had the Defect;

b. Whether Defendant knew or should have known that the Devices could not be safely, securely, and reliably used to store and retrieve data;

c. Whether Defendant failed to disclose material facts relating to the Devices, namely, that the Devices were defective and unsafe, unsecure, and unreliable for storing and retrieving data;

CLASS ACTION COMPLAINT
CASE NO.

d.      Whether the defective nature of the Devices constitutes a material fact that reasonable consumers would have considered in deciding whether to purchase the Devices;

e.      Whether Defendant breached its express warranties as alleged herein;

f.      Whether Defendant breached its implied warranties as alleged herein;

g.      Whether Defendant violated California's Unfair Competition Law as alleged herein;

h.      Whether Defendant violated California's False Advertising Law as alleged herein;

i.      Whether Defendant violated the New York Deceptive Acts and Practices Act as alleged herein;

j.      Whether Defendant was unjustly enriched; and

k.      The nature of the relief, including damages and equitable relief, to which Plaintiff and the members of the Class are entitled.

**Typicality of Claims**
**Fed. R. Civ. P. 23(a)(3)**

108.    Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class members, purchased one or more of Defendant's Devices in reliance on the misrepresentations and warranties described above, suffered damages as a result of that purchase, and seek the same relief as the proposed Class members.

**Adequacy of Representation**
**Fed. R. Civ. P. 23(a)(4)**

109.    Plaintiff is an adequate representative of the Class and New York State Class because his interests do not conflict with the interests of the members of the Class, and he has retained counsel competent and experienced in complex class action and consumer litigation.

110.    Plaintiff and his counsel will fairly and adequately protect the interest of the members of the Class.

**Superiority of a Class Action**
**Fed. R. Civ. P. 23(b)(3)**

111.    A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and members of the Class. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the

CLASS ACTION COMPLAINT
CASE NO.

complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief
**Fed. R. Civ. P. 23(b)(1) and (2)**

112.    In the alternative, this action may properly be maintained as a class action, because:

A.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

B.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

C.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification
**Fed. R. Civ. P. 23(c)(4)**

113.    In the alternative, the common questions of fact and law, set forth in Paragraph 107, are appropriate for issue certification on behalf of the proposed Class.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(Cal. Com. Code § 2313)**
**(Plaintiff individually and on behalf of the proposed Class)**

114. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

115. Plaintiff brings this claim on behalf of himself and the Class against Defendant.

116. Defendant is and was at all relevant times a "merchant" with respect to the Devices under Cal. Com. Code §§ 2104(1), and a "seller" of the Devices under § 2103(1)(d).

117. Plaintiff and Class members who purchased the Devices are "buyer[s]" within the meaning of Cal. Com. Code § 2103(1)(a).

118. The Devices are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1).

119. On its website, advertisements, marketing materials, and on the Devices' packaging and labels, Defendant expressly warranted to Plaintiff and Class members that the Devices were effective at storing and retrieving Plaintiff's and Class members' data. These affirmations of fact and/or promises made by Defendant formed the basis of the bargain that was reached when Plaintiff and Class members unknowingly purchased the Devices with the Defect.

120. In connection with the purchase of the Devices, Defendant provided Plaintiff and Class members with written express warranties that the Devices "will be free from material defects in manufacture, will conform to [Defendant's] published product specifications, and will be fit for normal use in accordance with published instructions during the Warranty Period specified in the table commencing on the date of purchase provided that the Product is legally placed on the market."[47]

121. In connection with the purchase of the Devices, Defendant also provided Plaintiff and Class members with written express warranties covering the repair, replacement, or refund if unable to repair or replace, any defective product.[48]

122. The Devices do not conform to Defendant's affirmations of fact and/or promises in that

---

[47] *See e.g.,* Consumer Products Limited Warranty (United States) for the SanDisk brand/product line at https://www.westerndigital.com/support/store/warranty-policy (last accessed September 2, 2023).
[48] *See id.*

CLASS ACTION COMPLAINT
CASE NO.

the Devices are not effective at storing or retrieving stored data.

123.     Defendant therefore breached its express warranties by placing products into the stream of commerce and selling them to consumers, including Plaintiff and Class members, when their use had negative effects, and were unusable for the stated purpose, rendering the Devices unfit for their intended use and purpose, and unsuitable for consumer use as marketed by Defendant. The Defect impairs the use, value, and safety of the Devices.

124.     Defendant was aware, or should have been aware, of the presence of the Defect in the Devices and therefore was aware or should have been aware of effects of the use of the Devices by Plaintiff and Class member. However, nowhere on the product packaging or labeling, Defendant's website, or other marketing materials did Defendant warn Plaintiff and Class members the Defect in the Devices.

125.     Instead, Defendant concealed the Defect in the Devices and deceptively represented that the Devices were safe, secure, and reliable at storing data. Defendant thus failed to ensure that the material representations it was making to consumers were true.

126.     The Defect was present in the Devices when the Devices were sold to Plaintiff and Class members. The Defect was undiscoverable by Plaintiff and Class members at the time of purchase of the Devices.

127.     Defendant is the manufacturer, marketer, advertiser, distributor, labeler, and seller of the Devices and therefore had exclusive knowledge and notice of the fact that the Devices did not conform to the affirmations of fact and/or promises.

128.     Defendant knowingly breached its express warranties by providing a product containing the Defect that was never disclosed to Plaintiff and Class members. Plaintiff and Class members were therefore induced to purchase the Devices under false and/or fraudulent pretenses.

129.     All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiff and Class members.

130.     Defendant was provided notice of the Defect by the consumer class action complaints filed against it, internal investigations, warranty claims, and user complaints sent directly to Defendant, and/or online user complaints. *See Zakikhani v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB (JDEx), 2022 WL

CLASS ACTION COMPLAINT
CASE NO.

1740034, at *10 (C.D. Cal. Jan. 25, 2022) (interpreting U.C.C. § 2-607, which Cal. Com. Code § 2607 is modeled after, and finding pre-suit notice is not required because defendant had actual knowledge prior to when the complaint was filed); *see also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1092 (N.D. Cal. 2021) (finding that notice was sufficiently pleaded because the complaint alleged that Toyota knew about the defect prior to when the complaint was filed). Affording Defendant a reasonable opportunity to cure its breach of its written warranties would be unnecessary and futile here because Defendant has known of and concealed the Defect in the Devices.

131.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of Class members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiff and Class members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their payment and/or overpayment for the Devices.

132.    Plaintiff and Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver the Devices conforming to its express warranties and resulting breach.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Cal. Com. Code § 2314)**
**(Plaintiff individually and on behalf of the proposed Class)**

133.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

134.    Plaintiff brings this claim on behalf of himself and the Class against Defendant.

135.    Defendant is and was at all relevant times a "merchant" with respect to the Devices under Cal. Com. Code §§ 2104(1), and a "seller" of the Devices under § 2103(1)(d).

136.    Plaintiff and Class members who purchased the Devices are "buyer[s]" within the meaning of Cal. Com. Code § 2103(1)(a).

137.    The Devices are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1).

138.    A warranty that the Devices were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§ 2314.

139.    Plaintiff and Class members purchased the Devices manufactured and marketed by

23

**CLASS ACTION COMPLAINT**
**CASE NO.**

Defendant by and through Defendant's authorized sellers for retail sale to consumers, or were third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Devices. Defendant knew or had reason to know of the specific use for which the Devices were purchased.

140. Defendant impliedly warranted that the Devices were in merchantable condition and fit. The Devices when sold at all times thereafter were not in merchantable condition and were and are not fit for the ordinary purpose of safely, securely, and reliably storing and retrieving stored data. Accordingly, Defendant breached its implied warranty of merchantability for the ordinary purpose for which the Devices are purchased and used.

141. Defendant cannot disclaim its implied warranty as it knowingly sold unsafe, unsecure, and unreliable Devices.

142. Defendant was provided notice of the Defect by the consumer class action complaints filed against it, internal investigations, warranty claims, and user complaints sent directly to Defendant, and/or online user complaints. *See Zakikhani v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB (JDEx), 2022 WL 1740034, at *10 (C.D. Cal. Jan. 25, 2022) (interpreting U.C.C. § 2-607, which Cal. Com. Code § 2607 is modeled after, and finding pre-suit notice is not required because defendant had actual knowledge prior to when the complaint was filed); *see also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1092 (N.D. Cal. 2021) (finding that notice was sufficiently pleaded because the complaint alleged that Toyota knew about the defect prior to when the complaint was filed). Affording Defendant a reasonable opportunity to cure its breach of its implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Defect in the Devices.

143. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members have been damaged in an amount to be proven at trial.

144. Plaintiff and Class members have been excused from performance of any implied warranty obligations as a result of Defendant's conduct described herein.

145.    Plaintiff and Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver the Devices conforming to its implied warranties and resulting breach.

### THIRD CAUSE OF ACTION
### Violations of Unlawful, Unfair, and Fraudulent Business Practices
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (Plaintiff individually and on behalf of the proposed Class)

146.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

147.    Plaintiff brings this claim on behalf of himself and the Class against Defendant.

148.    Defendant has violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

149.    Defendant's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law. In particular, Defendant sold the Devices to Plaintiff and Class members despite the Defect in those Devices and failed to disclose the Defect at the point of sale or otherwise.

150.    Defendant's business acts and practices are unlawful in that they violate the California Commercial Code §§ 2313 and 2314 regarding breach of express and implied warranties and the False Advertising Law for the reasons set forth herein.

151.    Defendant's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendant knowingly concealed and failed to disclose the Defect—which affected the core and/or central function of the Devices, namely to store and retrieve data safely, securely, and reliably—at the point of sale and otherwise that the Devices have the Defect. Had Defendant disclosed these facts, Plaintiff, Class members, and reasonable consumers would not have purchased the Devices or would have paid significantly less for them.

152.    Defendant's conduct also constitutes unfair business practices for at least the following reasons:

a.      The gravity of harm to Plaintiff and the proposed class from Defendant's acts and practices far outweighs any legitimate utility of that conduct;

b.       Defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed Class; and

c.       Defendant's conduct undermines or violates legislatively declared policies not to engage in misleading and deceptive conduct.

153.    As a direct and proximate result of Defendant's business practices, Plaintiff and the proposed Class members suffered injury in fact and lost money or property, because they purchased and paid for Devices with the Defect that they otherwise would not have, or in the alternative, would have paid less for.

154.    Plaintiff and the proposed Class members are entitled to equitable relief, including restitution to compensate Plaintiff and the Class as a result of Defendant's unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Defendant's misconduct as alleged herein and directing Defendant to disclose the existence of the Defect to all purchasers of the Devices and directing Defendant to provide an adequate replacement or refund.  Plaintiff, the Class, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk for data loss. Plaintiff will also suffer irreparable injury if Defendant's misleading practices are not enjoined. Plaintiff has an interest in buying Defendant's solid-state drives in the future, often sees marketing for Defendant's solid-state drives, and will consider purchasing Defendant's solid-state drives in the future, if possible, but has no way of determining whether the solid-state drives sold by Defendant contain the Defect.

155.    Plaintiff brings this cause of action on behalf of the Class in the alternative to any causes of action brought for legal remedies and expressly allege that for purposes of this cause of action they lack adequate remedies at law. In addition, the restitution that may be available under this claim, including for restitutionary disgorgement attributable to an increased volume of sales of the Devices made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Defendant, Plaintiff, individually and as members of the Class, have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Defendant's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

CLASS ACTION COMPLAINT
CASE NO.

**FOURTH CAUSE OF ACTION**
**Violations of the California False Advertising Law**
**(Cal. Civ. Code § 17500, *et seq*.)**
**(Plaintiff individually and on behalf of the proposed Class)**

156.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

157.    Plaintiff brings this claim on behalf of himself and the Class against Defendant.

158.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

159.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and Class members.

160.    Defendant has violated § 17500 because its promises of safety, reliability and functionality of the Devices as set forth in this Complaint were misleading in light of the failure to disclose the material facts set forth herein, and thus, Defendant's representations and promises were likely to deceive a reasonable consumer.

161.    Plaintiff and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's deceptive  practices. In purchasing their Devices, Plaintiff and Class members relied on the misrepresentations and/or omissions of Defendant with respect to the safety, reliability, and functionality of the Devices. Defendant's representations turned out not to be true because the Devices were and are distributed with the Defect that causes the Devices to lose data and/or are at high risk for losing data. The Defect affected the core and/or central functionality of the Devices, namely to store and retrieve data safely, securely, and reliably. Had Defendant disclosed these facts, through Defendant's advertising, marketing, and other publications, such as its websites, and/or the Devices'

CLASS ACTION COMPLAINT
CASE NO.

packaging, manuals, or brochures, Plaintiff, Class members, and reasonable consumers would not have purchased the Devices or would have paid significantly less for them. Accordingly, Plaintiff and Class members overpaid for their Devices and did not receive the benefit of their bargain.

162. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's businesses. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

163. Plaintiff, individually and on behalf of the Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices and to restore to the Plaintiff and the Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

164. Plaintiff and the proposed Class members are entitled to equitable relief, including restitution to compensate Plaintiff and the Class as a result of Defendant's unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Defendant's misconduct as alleged herein and directing Defendant to disclose the existence of the defect to all purchasers of the Devices and directing Defendant to provide an adequate replacement or refund. Plaintiff, the Class, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk for data loss that is priceless. Plaintiff will also suffer irreparable injury if Defendant's misleading practices are not enjoined. Plaintiff has an interest in buying Defendant's solid-state drives in the future, often see marketing for Defendant's solid-state drives, and will consider purchasing Defendant's solid-state drives in the future, if possible, but have no way of determining whether the solid-state drives sold by Defendant contain the defect and thus are at risk of data loss.

165. Plaintiff brings this cause of action on behalf of the Class in the alternative to any causes of action brought for legal remedies and expressly allege that for purposes of this cause of action they lack adequate remedies at law. In addition, the restitution that may be available under this claim, including for restitutionary disgorgement attributable to an increased volume of sales of the Devices made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Defendant, Plaintiff, individually and as members of the Class, have no adequate

CLASS ACTION COMPLAINT
CASE NO.

remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Defendant's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**FIFTH CAUSE OF ACTION**
**Violations of the New York Deceptive Acts and Practices Act**
**(N.Y. GEN. BUS. LAW §§ 349, *et seq.*)**
**(Plaintiff individually and on behalf of the New York State Class)**

166. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

167. Plaintiff brings this claim on behalf of himself and the New York State Class against Defendant.

168. Plaintiff has standing to pursue this claim because he suffered injury in fact and lost money or property as a result of Defendant's actions as described above. All members of the New York State Class have incurred actual damages and ascertainable loss in the form of the diminished value of their Devices because had they known the truth about the Devices, they would not have purchased them or paid as much for these products.

169. Plaintiff and the New York State Class members are persons within the meaning of the New York Deceptive Acts and Practices Act (the "New York DAPA"). N.Y. Gen. Bus. Law § 349(h).

170. Defendant's actions as set forth herein occurred in the conduct its business, trade, or commerce within the meaning of N.Y. Gen. Bus. Law § 349(a).

171. The New York DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

172. In the course of its business, Defendant concealed, suppressed, and misrepresented material facts concerning the Devices, in violation of N.Y. Gen. Bus. Law § 349(a). It did so by, among other things, representing that the Devices were safe, secure, and reliable for storing digital data—but concealing that the Devices contain the Defect. Defendant's representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Plaintiff and the New York State Class.

CLASS ACTION COMPLAINT
CASE NO.

173.     Defendant knew these statements were false and misleading at the time of sale. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Devices.

174.     Defendant's actions as alleged were further "deceptive" because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Defendant's customers, including Plaintiff and the New York State Class. The harm caused by Defendant's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff and the New York State Class. Defendant could and should have chosen one of many reasonably available alternatives, including not selling the Devices, disclosing to prospective buyers that these Devices contain the Defect, and/or representing that the Devices were not suitable for consumer use.

175.     As a result of Defendant's conduct in violation of in violation of N.Y. Gen. Bus. Law § 349(a), Plaintiff and the New York State Class received an inferior product to the product which they were promised. Had Defendant disclosed the aforementioned material facts concerning the Devices, Plaintiff and the New York State Class would not have purchased these products or would have paid substantially less.

176.     Defendant owed Plaintiff and the New York State Class a duty to disclose the true nature of the Devices because Defendant: (a) possessed exclusive knowledge about the Devices' true nature; (b) intentionally concealed the foregoing from Plaintiff and the New York State Class; and (c) made incomplete representations about the safety, security, and reliability for storing digital data, while purposefully withholding material facts from Plaintiff and the New York State Class that contradicted these representations. At the time of sale, Defendant knew about the Devices unsafe, unsecure, and unreliable nature and that these products were not suitable for storing digital data. Defendant acquired additional information concerning the Devices safety attributes and reliability for storing digital data after these products were sold but continued to conceal such information.

177.     Accordingly, Defendant violated the New York DAPA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or

omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Devices.

178.     Defendant acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Devices with the intent to mislead Plaintiff and the New York State Class members. Defendant's knowledge of the Devices' unsafe, unsecure, and unreliable nature and that these products were not suitable for storing digital data put it on notice that these products were not as advertised. As a result, Defendant knew or should have known that its conduct violated the New York DAPA.

179.     As a direct and proximate result of Defendant's violations of the New York DAPA, Plaintiff and the New York State Class have suffered injury-in-fact, actual damage, or both.

180.     Defendant's wrongful conduct constitutes a continuing course of unfair practices because Defendant continues to represent that the Devices are safe, secure, reliable, and suitable for storing digital data. Defendant's violations present a continuing risk to Plaintiff, the New York State Class members, as well as the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Plaintiff and the New York State Class therefore seek injunctive and equitable relief to remedy Defendant's deceptive marketing, advertising, and packaging and to recall all Devices.

181.     Plaintiff and the New York State Class further seek monetary damages against Defendant, measured as actual damages in an amount to be determined at trial or $50 each, whichever is greater, as well as treble damages up to $1,000 each because Defendant willfully and knowingly violated the New York DAPA. Plaintiff and the New York State Class also seek reasonable attorneys' fees and any other just and proper relief available under the New York DAPA.

**SIXTH CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiff individually and on behalf of the proposed Class)**

182.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

183.     Plaintiff brings this cause of action on behalf of himself and the Class.

184.     Defendant had an independent duty to disclose the truth about the Defect in the Devices. Plaintiff and Class members relied on Defendant's material misrepresentations and omissions regarding the safety, security, reliability, and functionality of Defendant's Devices.

185.     Defendant's failure to disclose was intentional and reflects a reckless disregard for the

31

CLASS ACTION COMPLAINT
CASE NO.

truth. Defendant knew about the Defect in the Devices, but intentionally failed to disclose that material fact to consumers, including Plaintiff and, as set forth herein, continues to conceal that fact through untrue and misleading statements to the public.

186.    Plaintiff and the Class members were induced to act by Defendant's fraudulent concealment of material facts regarding the safety, security, reliability, and functionality of its Devices. Had Plaintiff and the Class been told of the defective nature of Defendant's Devices, they would not have purchased such products or would have paid less for them.

187.    Plaintiff and the Class members had a reasonable expectation that the defective products they were purchasing for storing their data were safe, secure and reliable.

188.    Defendant reasonably could have anticipated and intended that Plaintiff and the Class purchased such products in part based upon such expectations and assumptions and intended them to do so.

189.    Defendant's false representations and omissions were material to consumers, including Plaintiff and the Class, because they concerned the safety, security, and reliability of the Devices, which played a significant role in the value of the Devices. The Defect affected the core and/or central functionality of the Devices, namely to store and retrieve data safely, securely, and reliably.

190.    Defendant's suppression and omission of material facts associated with the safety, security, and reliability risks of the Devices, including the central function of the Devices, occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

191.    In failing to disclose the safety, security, and reliability risks of the Devices, Defendant concealed material facts and breached its duty to Plaintiff and the Class not to do so.

192.    In addition to failing to disclose information it had a duty to disclose, as described above, Defendant actively concealed material information regarding the Defect in the Devices.

193.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiff and Class members by concealing material information regarding the Defect in the Devices.

194.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and suppressed facts, in

that they would not have purchased or paid as much for the Devices, or would have taken other affirmative steps in light of the information concealed from them.

195. Plaintiff's and Class members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

196. Because of the concealment and/or suppression of facts, Plaintiff and Class members sustained damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Devices as a result of Defendant's concealment of the true safety, security, and reliability of the Devices. Had Plaintiff and Class members been aware of the true nature of the Devices, and Defendant's disregard for the truth, Plaintiff and Class members would have paid less for their Devices or would not have purchased them at all.

197. As a direct and proximate result of Defendant's acts of concealment and suppression, Plaintiff and the Class have suffered and will continue to suffer actual economic damages as detailed above.

198. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (Plaintiff individually and on behalf of the proposed Class)

199. Plaintiffs re-allege paragraphs 1-113 above as if fully set forth herein.

200. As described above, Defendant sold the Devices to Plaintiff and Class members even though they contain the Defect.

201. Defendant obtained monies which rightfully belong to Plaintiff and the proposed Class members to the detriment of Plaintiff and the proposed Class members.

202. Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class members, who, without knowledge of the Defect, paid a higher price to buy their Devices than those Devices were worth. Defendant also received monies for the Devices that

CLASS ACTION COMPLAINT
CASE NO.

Plaintiff and the proposed Class members would not have otherwise purchased.

203. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

204. Defendant's retention of these wrongfully obtained monies would violate the fundamental principles of justice, equity, and good conscience.

205. Plaintiff and the proposed Class are entitled to restitution based on Defendant's unjust enrichment, plus interest.

206. Plaintiff brings this cause of action on behalf of the Class in the alternative to any causes of action brought for legal remedies and expressly allege that for purposes of this cause of action they lack adequate remedies at law. In addition, the restitution that may be available under this claim, including for restitutionary disgorgement attributable to an increased volume of sales of the Devices made possible by the challenged practices, may not be recoverable as damages or otherwise at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, pray for relief and judgment against Defendant as follows:

A. Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class compensatory damages, in an amount exceeding $5,000,000.00, to be determined by proof;

C. Awarding Plaintiff and the Class appropriate relief, including actual and statutory damages;

D. For punitive damages;

E. For declaratory and equitable relief, including restitution and disgorgement of profits;

F. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

G. Awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

H. Awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable by law;

CLASS ACTION COMPLAINT
CASE NO.

1    I.      Awarding pre-judgment and post-judgment interest; and

2    J.      Granting any other relief as this Court may deem just and proper.

3                              **JURY TRIAL DEMANDED**

4        Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

5    DATED: September 5, 2023                 Respectfully submitted,

6                                             **GIBBS LAW GROUP LLP**

7                                             By: */s/ Rosemary M. Rivas*
8                                             Rosemary M. Rivas (SBN 209147)
                                              Rosanne L. Mah (SBN 242628)
9                                             1111 Broadway, Suite 2100
                                              Oakland, California 94607
10                                            Telephone: (510) 350-9700
                                              Facsimile: (510) 350-9701
11                                            rmr@classlawgroup.com
                                              rlm@classlawgroup.com
12

13                                            *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.